IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ERIC JOHNSON, | ) | CASE NO. 1:15CV43 |
| | ) | |
| Petitioner, | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| AL LAZAROFF, | ) | |
| | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Respondent. | ) | |

Petitioner Eric Johnson ("Petitioner" or "Johnson") brings this habeas corpus action pursuant to 28 U.S.C. § 2254.  Doc. 1.  Johnson is detained at the Mansfield Correctional Institution, having been found guilty by a Cuyahoga County, Ohio, Court of Common Pleas jury of one count of kidnapping, two counts of aggravated robbery, two counts of felonious assault, and one count of attempted murder, all with firearm specifications; and one count of petty theft.  Doc. 5-1, pp. 20-21.[1]  *State v. Johnson*, Case No. CR-12-567736-A (Cuyahoga Cty. Common Pleas Ct. filed February 19, 2013).  Prior to sentencing, the trial court merged the kidnapping and aggravated robbery counts and the felonious assault and aggravated murder counts; the state elected to proceed to sentencing on the aggravated robbery and attempted murder counts; and the trial court merged the two attendant firearm specifications.  Doc. 5-1, p. 23.  Accordingly, the court sentenced Johnson to nine years in prison for aggravated robbery, nine years for attempted murder, and three years on the firearm specification, the terms to be served consecutively, for an aggregate sentence of twenty-one years in prison.  Doc. 5-1, p. 23.

On January 9, 2015, Johnson filed his Petition for Writ of Habeas Corpus setting forth six grounds for relief.  Doc. 1, pp. 3-4.  This matter has been referred to the undersigned Magistrate

---

[1] Doc. page citations are to ECF Doc. page numbers.

1

Judge for a Report and Recommendation pursuant to Local Rule 72.2.  As set forth more fully below, Grounds One and Three are procedurally defaulted, Grounds Two and Six are not cognizable and fail on the merits, Ground Four fails on the merits; and a portion of Ground Five fails to state a claim and the remainder of that ground fails on the merits.  Thus, the undersigned recommends that Johnson's Petition for Writ of Habeas Corpus (Doc. 1) be **DISMISSED** in part and **DENIED** in part.[2]

## I.  Background

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, the state court's factual findings are presumed correct.  28 U.S.C. § 2254(e)(1). The petitioner has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Railey v. Webb*, 540 F. 3d 393, 397 (6th Cir. 2008).

### A.  State Court Action

#### 1.  Underlying Facts

The following summary of underlying facts is taken from the opinion of the Cuyahoga County Court of Appeals, Eighth Appellate District of Ohio:[3]

{¶ 5} At trial, through the testimony of six witnesses, the evidence established that in the early hours of August 26, 2012, James Keith was robbed and shot multiple times. As he laid in the middle of the street, a passing motorist stopped and summoned EMS, who arrived to find Keith's bloody body. The EMS transported Keith to MetroHealth Hospital where he remained for more than a month.

{¶ 6} Detective David Harris of the Cleveland Police Department Fourth District testified that he and his partner, Detective Brian Todd, immediately responded to the scene, where they found Keith screaming that he had been shot. Detective Harris testified that they were unable to ascertain who had shot Keith, because he just kept repeating hysterically that he had been shot and then passed out.

---

[2]  The grounds in the petition that are procedurally defaulted, not cognizable, and fail to state a claim result in dismissal; the grounds in the petition that are addressed on the merits result in denial.

[3]  Johnson has not demonstrated by clear and convincing evidence that the state court's findings were incorrect. Accordingly, the state court's findings are presumed correct.  *See* 28 U.S.C. § 2254(e)(1); *see also Railey*, 540 F. 3d at 397.

{¶ 7} Detective James Brooks, also of the Cleveland Police Department's Fourth District, testified that he went to see Keith at the hospital almost a month later. Detective Brooks testified that Keith indicated that "E" shot him and that "Junior" was with "E." Detective Brooks testified that Keith indicated that "E" and "Junior" were from the Garden Valley Estates. Further investigation revealed that "E" was Johnson's nickname and "Junior" was codefendant John Alexander's nickname.

{¶ 8} Detective Brooks, using a procedure known as blind administration, created photo arrays that Detective James Bellanca later administered to Keith. Detective Brooks stated that blind administration is used to remove any signs of bias when the photo lineup is presented to the victim or witness. Detective Bellanca did not know which of the photographs in the array, if any, depicted Johnson or his codefendant and that he was not present when Detective Bellanca administered the photo arrays.

{¶ 9} After being shown the photo arrays, Detective Brooks said that Keith identified the photo of Johnson as his assailant, circled Johnson's photo, signed his name, and indicated that he was certain that Johnson was the man who robbed and shot him multiple times. Keith also identified Alexander as Johnson's codefendant. In addition, Keith made an in-court identification of Johnson.

{¶ 10} Keith testified that he had gone to the Garden Valley Estates to borrow money from his friend, Mya. After picking up the money, he started to walk home through a field near East 93rd Street and Union Avenue, when he saw Johnson and Alexander sitting in a black Volkswagen Jetta. Keith stated that he knew Johnson, but only knew his nickname "E" and knew Alexander since he was 14 years old, but only by his nickname "Junior."

{¶ 11} Keith testified that shortly after he had passed the Volkswagen Jetta, he felt a gun in the back of his head, turned around, and looked in Johnson's eyes. Johnson proceeded to hit him in the head with the gun and said: "Don't you know this is a robbery?" Keith looked again and saw Alexander standing a couple feet away.

{¶ 12} Keith said that Johnson kept asking if Keith knew where he was, which is gang parlance indicating that Keith was in the wrong territory. Johnson then ordered Keith to empty his pocket and he complied, giving up $40 and two cell phones.

{¶ 13} After Keith gave up his property, Johnson ordered him to run, but then began shooting. A bullet struck Keith's leg, he lost balance and fell near a pole. Johnson then shot him multiple times in his stomach from close range and he was looking at Johnson the entire time. Johnson and Alexander then fled in the Volkswagen Jetta.

{¶ 14} Keith laid on the ground thinking he was going to die, but decided to crawl into the middle of the street. He said a motorist eventually pulled alongside him and called for an ambulance. Keith later passed out and when he woke up in the hospital, the staff told him he had been in a coma.

Doc. 5-1, pp. 95-98; *State v. Johnson*, 2014 WL585043, at *1-3  (Oh. Ct. App. Feb. 13, 2014).

### 2.  Procedural History

On October 22, 2012, a Cuyahoga County Grand Jury indicted Johnson on one count of kidnapping, Ohio Revised Code § 2905.01(A)(2), two counts of aggravated robbery, R.C. §§ 2911.01(A)(1) & 2911.01(A)(3); two counts of felonious assault, R.C. § 2903.11(A)(1) & (2); one count of attempted murder, R.C. § 2923.02/2903.02(A), all with firearm specifications, and one count of petty theft, R.C. § 2913.02(A)(1).  Doc. 5-1, pp. 4-8.  Johnson, through counsel, pleaded not guilty.  Doc. 5-1, p. 9.

Johnson filed a motion to suppress the identification testimony of the victim, arguing that law enforcement used improper and unduly suggestive identification procedures.  Doc. 5-1, pp. 10-11.  The trial court held a hearing on Johnson's motion to suppress and thereafter denied his motion.  Docs. 5-1, p. 252; 6-1, pp. 74-75.

The case proceeded to trial and the jury found Johnson guilty on all counts.  Doc. 5-1, pp. 20-21.  Prior to sentencing, the trial court merged the kidnapping and aggravated robbery counts and the felonious assault and aggravated murder counts; the state elected to proceed to sentencing on the aggravated robbery and attempted murder counts; and the trial court merged the two attendant firearm specifications.  Doc. 5-1, p. 23.  The court sentenced Johnson to nine years in prison for aggravated robbery, nine years for attempted murder, and three years on the firearm specification, to be served consecutively, for an aggregate sentence of twenty-one years in prison.  Doc. 5-1, p. 23.

### B. Direct Appeal

On April 24, 2013, Johnson, through counsel, appealed to the Ohio Court of Appeals. Doc. 5-1, p. 25.  He raised the following assignments of error:

1. The trial court erred in convicting and consecutively sentencing allied crimes of similar import which resulted in cumulative punishments violating the Double Jeopardy clause of

4

the Fifth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, and Section 10, Article I of the Ohio Constitution.

2. The trial court abused its discretion by imposing consecutive sentences contrary to R.C. 2929.14 and the purposes and principles of the felony sentencing guidelines.

3. Appellant was denied effective assistance of counsel in violation of Amendments VI and XIV, United States Constitution; and Article I, Section 10, Ohio Constitution.

4. Appellant's convictions are against the manifest weight of the evidence.

5. Prosecutorial misconduct deprived Appellant of his constitutionally guaranteed right to a fair trial, in violation of the Fifth and Fourteenth Amendments to the United States Constitution and Section 10, Article I of the Ohio Constitution.

6. The Appellant was denied his right to due process when the court failed to hold a proper Remmer hearing to determine potential juror bias.

Doc. 5-1, p. 31.  On February 13, 2014, the Ohio Court of Appeals affirmed the trial court's

judgment.  Doc. 5-1, pp. 92-117; *Johnson*, 2014 WL585043.

### C. Motion to File Delayed Appeal in the Ohio Supreme Court

Johnson did not timely appeal the Ohio Court of Appeals' decision.  On May 5, 2014,

Johnson, through new counsel, filed a Motion for Leave to File a Delayed Appeal and a Notice

of Appeal with the Ohio Supreme Court.  Docs. 5-1, pp. 118, 151.  On June 25, 2014, the Ohio

Supreme Court denied Johnson's motion for delayed appeal and dismissed his case.  Doc. 5-1, p.

153.

### D.  Petition for Post-Conviction Relief

While his direct appeal was pending, Johnson, through counsel, filed a petition for post-

conviction relief in the trial court on December 3, 2013.  Doc. 5-1, p. 154.  He asserted that his

trial counsel was ineffective for failing to investigate and subpoena alibi witnesses and for failing

to inform him of a plea bargain offer allegedly made during trial.  Doc. 5-1, pp. 157-158.  On

January 8, 2014, the trial court denied Johnson's petition.  Doc. 5-1, p. 172.

On February 27, 2014, Johnson, through counsel, filed a "Supplement" to his post-conviction petition asserting new evidence—an affidavit of his co-defendant who had previously pleaded guilty.  Doc. 5-1, pp. 173, 180.  On March 14, 2014, the trial court granted the state's motion to dismiss the supplement.  Doc. 5-1, p. 183.  On May 2, 2014, Johnson requested the trial court issue findings of fact and conclusions of law.  Doc. 5-1, p. 184.  On September 3, 2014, the trial court issued its findings of fact and conclusions of law, stating that Johnson's petition was untimely and, alternatively, was without merit.  Doc. 5-1, pp. 186-192.

On October 1, 2014, Johnson, through counsel, appealed to the Ohio Court of Appeals. Doc. 5-1, p. 194.  He raised the following assignments of error:

> 1. Defendant was denied due process of law and effective assistance of counsel when counsel failed to file a timely post-conviction petition.
>
> 2. Defendant was denied due process of law when the court dismissed his petition for post-conviction relief without an evidentiary hearing.

Doc. 5-1, p. 207.  On April 30, 2015, the Ohio Court of Appeals affirmed the trial court's judgment.  *See State v. Johnson*, Case No. 101993 (Oh. Ct. App. filed April 30, 2015); *State v. Johnson*, 2015 WL1962909 (Oh. Ct. App. April 30, 2015).  Johnson filed a motion for reconsideration, which the Ohio Court of Appeals denied.  *See Johnson*, Case No. 101993 (Oh. Ct. App. filed June 9, 2015).

On July 13, 2015, Johnson appealed to the Ohio Supreme Court.  *See State v. Johnson*, Case No. 2015-1136 (Ohio Supreme Ct. filed July 13, 2015).   On December 16, 2015, the Ohio Supreme Court declined jurisdiction.  *Id*.

**E. Federal Habeas Petition**

On July 28, 2014, Johnson filed his Petition for a Writ of Habeas Corpus.  Doc. 1.   He listed the following grounds for relief:

**<u>Ground One</u>**: Fourteenth Amendment

**Supporting Facts**: There was insufficient supporting facts and insufficient evidence to convict petitioner with evidence beyond a reasonable doubt and he was entitled to judgment of acquittal because the evidence was insufficient to allow a rational fact finder to return a verdict of guilty.

**Ground Two**: Fourteenth Amendment

**Supporting Facts**: Petitioner was entitled to a new trial because his conviction was against the manifest weight of the evidence.

**Ground Three**: Sixth and Fourteenth Amendment

**Supporting Facts**: Petitioner was denied effective assistance of counsel because counsel failed to file motion to suppress evidence concerning an alleged statement given by petitioner without appropriate warnings or an understanding of the proceedings.

**Ground Four**: Fifth, Sixth and Fourteenth Amendment

**Supporting Facts**: Petitioner was subjected to unconstitutional multiple punishments in violation of his Fifth Amendment rights when the court sentenced petitioner separately for offenses which were allied offenses and should have been merged for the purposes of sentencing.

**Ground Five**: Fourteenth Amendment

**Supporting Facts**: Petitioner was denied a fair trial because of prosecutorial misconduct in violation of his right under the Fifth, Sixth and Fourteenth Amendments. In addition, petitioner was denied a fair trial and impartial jury when the court failed to conduct a proper hearing to determine potential juror bias.

**Ground Six**: Fourteenth Amendment

**Supporting Facts**: Petitioner presented evidence of actual innocence, was denied a hearing or release based upon uncontroverted evidence that petitioner was not the one responsible for the crimes alleged in the indictment. Petitioner post-conviction counsel was also ineffective for failure to timely file a petition for post-conviction relief even though counsel had the necessary information to file within the time restrictions of Ohio law.

Doc. 1, pp. 3-4.  On March 6, 2015, Respondent filed a Return of Writ (Doc. 5) and Johnson

filed a Traverse (Doc. 7) and a Notice of New Authority (Doc. 8).[4]  Respondent argues that

---

[4]  Johnson's Notice of New Authority states, "An issue in this case is whether Motion for Leave to File a Delayed Appeal to the Ohio Supreme Court would toll the statute of limitations. A recent decision by the United States Court of Appeals for the Sixth Circuit appears to answer that question in the affirmative. In Board v. Bradshaw, Case No.

Grounds One through Five are procedurally defaulted, Grounds Two and Six are not cognizable, a portion of Ground Five fails to state a claim, and that all the grounds fail on the merits. Doc. 5, pp. 8-35.

## II. Law

### A. Standard of Review under AEDPA

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214 ("AEDPA"), apply to Johnson's habeas petition because he filed it after the effective date of AEDPA. 28 U.S.C. § 2254; *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007). Under AEDPA, a petitioner must meet certain procedural requirements in order to have his claims reviewed in federal court. *Smith v. Ohio Dep't of Rehab. & Corr.*, 463 F.3d 426, 430 (6th Cir. 2006). "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim." *Daniels v. United States*, 532 U.S. 374, 381 (2001). Although procedural default is sometimes confused with exhaustion, exhaustion and procedural default are distinct concepts. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). Failure to exhaust applies when state remedies are "still available at the time of the federal petition." *Id.* at 806 (quoting *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982)). In contrast, when state court remedies are no longer available, procedural default rather than exhaustion applies. *Williams*, 460 F.3d at 806.

**Exhaustion.** A federal court may not grant a writ of habeas corpus unless the petitioner has exhausted all available remedies in state court. 28 U.S.C. § 2254(b)(1)(A). A state

---

14-3199, ___ F.3d ___, (6th Cir. 2015), the court ruled that an unsuccessful motion for leave to file a delayed appeal tolled the applicable statute of limitations." Doc. 8, p. 1. He concludes, "Thus, the attempt by petitioner to appeal to the Ohio Supreme Court by way of a delayed appeal would toll the statute of limitations, therefore petitioner's petition appears to be timely." Doc. 8, p. 2. There is no contention in this case that Johnson's federal habeas petition is untimely; Johnson's Notice of New Authority is, therefore, inapplicable to the issues raised in this case.

defendant with federal constitutional claims must fairly present those claims to the state courts before raising them in a federal habeas corpus action. 28 U.S.C. § 2254(b), (c); *Anderson v. Harless*, 459 U.S. 4, 6  (1982) (per curiam); *Picard v. Connor*, 404 U.S. 270, 275–76 (1971); *see also Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006) (quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003)) ("[f]ederal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts").  A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845-48 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990).  In order to satisfy the fair presentation requirement, a habeas petitioner must present both the factual and legal underpinnings of his claims to the state courts. *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  This means that the petitioner must present his claims to the state courts as federal constitutional issues and not merely as issues arising under state law.  *See, e.g.*, *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987); *Prather v. Rees*, 822 F.2d 1418, 1421 (6th Cir. 1987).

**Procedural Default.**  Procedural default may occur in two ways.  *Williams*, 460 F.3d at 806.  First, a petitioner procedurally defaults a claim if he fails "to comply with state procedural rules in presenting his claim to the appropriate state court." *Id*.  In *Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir. 1986), the Sixth Circuit provided four prongs of analysis to be used when determining whether a claim is barred on habeas corpus review due to petitioner's failure to comply with a state procedural rule: (1) whether there is a state procedural rule applicable to petitioner's claim and whether petitioner failed to comply with that rule; (2) whether the state court enforced the procedural rule; (3) whether the state procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim and (4) whether the petitioner can demonstrate cause for his failure to follow the rule and

that he was actually prejudiced by the alleged constitutional error.  *See also Williams*, 460 F.3d at 806 ("If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.") (citing *Maupin*, 785 F.2d at 138).

Second, "a petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures.'" *Williams*, 460 F.3d at 806 (citing *O'Sullivan*, 526 U.S. at 848).   "If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Id*.  While the exhaustion requirement is technically satisfied because there are no longer any state remedies available to the petitioner, *see Coleman v. Thompson*, 501 U.S. 722, 732 (1991), the petitioner's failure to have the federal claims considered in the state courts constitutes a procedural default of those claims that bars federal court review.  *Williams*, 460 F.3d at 806.

To overcome a procedural bar, a petitioner must show cause for the default and actual prejudice that resulted from the alleged violation of federal law or that there will be a fundamental miscarriage of justice if the claims are not considered.  *Coleman*, 501 U.S. at 750.

**Merits Review**.  In order to obtain habeas relief under 28 U.S.C. § 2254(d), a petitioner must show either that the state court decision (1) resulted in a decision contrary to, or involving an unreasonable application of, clearly established federal law as determined by the United States Supreme Court ("contrary to" clause); or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings ("unreasonable application" clause).  *Id*.

"Under the 'contrary to' clause, a federal habeas court may grant a writ if the state court arrives at a conclusion opposite to that reached by the [United States Supreme] Court on a question of law or [based on] a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000).  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.  "Clearly established federal law" refers to the holdings, not dicta, of the Supreme Court's decisions as of the time of the relevant state court decision, as well as legal principals and standards flowing from Supreme Court precedent.  *Id.* at 412; *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005).  A state court is not required to cite Supreme Court precedent or reflect an awareness of Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts" such precedent.  *Early v. Packer*, 537 U.S. 3, 8 (2002); *Lopez v. Wilson*, 426 F.3d 339, 358 (6th Cir. 2005).  If the Supreme Court has not addressed the petitioner's specific claims, a reviewing district court cannot find that a state court acted contrary to, or unreasonably applied, Supreme Court precedent or clearly established federal law.  *Carey v. Musladin*, 549 U.S. 70, 77 (2006).

In determining whether the state court's decision involved an unreasonable application of law, the court employs an objective standard.  *Williams*, 529 U.S. at 409.  "A state court's determination that a claim lacks merit precludes federal habeas review so long as 'fair-minded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *see also Bray v. Andrews*, 640 F.3d 731, 738 (6th Cir. 2011).  "A state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that

there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103.

### III. Claim Analysis

Johnson sets forth six grounds for relief in his Petition. Doc. 1, pp. 3-4. Respondent argues that Grounds One through Five are procedurally defaulted, Grounds Two and Six are not cognizable, a portion of Ground Five fails to state a claim, and that all the grounds fail on the merits.[5] Doc. 5, pp. 8-35.

### A. Ground One is procedurally defaulted

In Ground One, Johnson argues that there were "insufficient supporting facts and insufficient evidence to convict [him] with evidence beyond a reasonable doubt" and that he was entitled to a judgment of acquittal. Doc. 1, p. 3. He characterizes this as a sufficiency of the evidence claim. Doc. 7, p. 3. Johnson did not raise this claim on direct appeal to the Ohio Court of Appeals; he only raised it in his Motion for Leave to File Delayed Appeal to the Ohio Supreme Court. *See* Doc. 5-1, p. 34 (statement of issues presented in Johnson's brief on direct appeal); Doc. 5-1, p. 119 (statement of propositions of law presented in Johnson's brief in support of his motion for leave). Thus, Johnson failed to raise and pursue this claim through the state's ordinary appellate review procedures and it is procedurally defaulted. *Williams*, 460 F.3d at 806; *O'Sullivan*, 526 U.S. at 848. He does not argue cause to excuse his default or prejudice as a result; nor does he assert that there will be a fundamental miscarriage of justice if his claim

---

[5] In his Return of Writ, Respondent asserts (Doc. 5, pp. 8-9), and Johnson appears to concede (Doc. 7, p. 3), that Ground Six is unexhausted because the Ohio Court of Appeals had not ruled on Johnson's appeal of the trial court's denial of his post-conviction petition. However, as outlined above in the procedural history, after briefing was complete in this case both the Ohio Court of Appeals and the Ohio Supreme Court ruled on Johnson's appeal. Thus, Ground Six is no longer unexhausted.

is not considered.[6]  *See Coleman*, 501 U.S. at 750.  Accordingly, Ground One is procedurally defaulted.

### B.  Ground Two is not cognizable

In Ground Two, Johnson argues that his conviction was against the manifest weight of the evidence.  Doc. 1, p. 3.  Federal habeas corpus relief is available only to correct federal constitutional violations.  28 U.S.C. § 2254(a); *Wilson v. Corcoran*, 562 US 1, 5 (2010).  A claim that a conviction is against the manifest weight of the evidence rests solely on state law and is not a cognizable claim in a federal habeas petition.  *See Ross v. Pineda*, 2011 WL 1337102, at *3 (S.D.Ohio April 11, 2011) ("Whether a conviction is against the manifest weight of the evidence is purely a question of Ohio law," citing *State v. Thompkins*, 678 N.E.2d 541 (Ohio 1997)).  Because Johnson's manifest weight of the evidence claim in Ground Two rests only on state law, it is not cognizable on federal habeas review, as Johnson concedes (Doc. 7, p. 3).  *See id.*

### C. Ground Three is procedurally defaulted

In Ground Three, Johnson argues that his trial counsel was ineffective "for failing to file a motion to suppress evidence concerning an alleged statement given by petitioner without appropriate warnings or an understanding of the proceeding."  Doc. 1, p. 3.  Johnson did not raise this claim on direct appeal to the Ohio Court of Appeals; he only raised it in his Motion for Leave to File Delayed Appeal to the Ohio Supreme Court.  Although Johnson included an ineffective assistance of trial counsel claim on direct appeal, he did not argue that counsel was ineffective for failing to move to suppress statements he made.  Instead, his ineffective assistance of counsel claim on direct appeal asserted that counsel was ineffective for failing to object to the state's alleged mischaracterization of the evidence during closing argument and failing to argue

---

[6]  Although Johnson generally asserts that counsel failed to timely appeal to the Ohio Supreme Court on direct appeal and that counsel was deficient during his post-conviction proceedings, he does not allege that his counsel was deficient in failing to include a claim for sufficiency of the evidence in his direct appeal to the Ohio Court of Appeals.  *See* Doc. 7, pp. 2-3.

to the jury that the photo identification was unduly suggestive.  *See* Doc. 5-1, pp. 48-50;

*Williams*, 460 F.3d at 806 ("To fairly present a claim to a state court a petitioner must assert both

the legal and factual basis for his or her claim.").  Thus, as in Ground One, Johnson failed to

raise and pursue the claim he asserts in Ground Three through the state's ordinary appellate

review procedures and it is procedurally defaulted.  *Id*.; *O'Sullivan*, 526 U.S. at 848.  He does

not argue cause to excuse his default or prejudice as a result; nor does he assert that there will be

a fundamental miscarriage of justice if his claim is not considered.  *See Coleman*, 501 U.S. at

750.  In fact, in his Traverse, Johnson presents no argument relevant to Ground Three.  Ground

Three is procedurally defaulted.

### D.  Ground Four fails on the merits

In Ground Four, Johnson argues that the trial court failed to merge his aggravated

robbery and attempted murder offenses prior to sentencing in violation of the Double Jeopardy

Clause of the Fifth Amendment.  Docs. 1, p. 4; 7, pp. 5-12.

"The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution

states that 'no person . . . shall . . . be subject for the same offense to be twice put in jeopardy of

life or limb . . .'"  *Person v. Sheets*, 527 Fed. App'x 419, 423 (6th Cir. 2013) (citing *Benton v.

Maryland*, 395 U.S. 784 (1969)).  "[A] defendant may not be subject to multiple punishments

unless the state legislature intended to so punish."  *Id*. (citing *Missouri v. Hunter*, 459 U.S. 359

(1983)).  "The Double Jeopardy Clause 'protects against a second prosecution for the same

offense after acquittal. It protects against a second prosecution for the same offense after

conviction. And it protects against multiple punishments for the same offense.'"  *Duncan v.

Sheldon*, 2014 WL 185882, * 31 (N.D. Ohio Jan. 15, 2014) (quoting *Volpe v. Trim*, 708 F.3d

688, 696 (6th Cir. 2013) (internal citations omitted)).

In *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), the Supreme Court developed the "same elements" test to determine whether Congress has authorized cumulative punishments: "The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Id*. at 304, 52 S.Ct. 180. The *Blockburger* test, however, is a "rule of statutory construction," *Albernaz*, 450 U.S. at 340, 101 S.Ct. 1137 (quoting *Whalen v. United States*, 445 U.S. 684, 691, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980)), "not a constitutional test in and of itself," *McCloud v. Deppisch*, 409 F.3d 869, 875 (7th Cir.2005), as quoted in *Palmer v. Haviland*, 273 Fed.Appx. 480, 486 (6th Cir.2008) (unpublished); *see Hunter*, 459 U.S. at 368, 103 S.Ct. 673 (explaining that the *Blockburger* test, as modified by subsequent precedent, "is not a constitutional rule requiring courts to negate clearly expressed legislative intent"). As a result, the *Blockburger* test "does not necessarily control the inquiry into the intent of a state legislature. Even if the crimes are the same under *Blockburger*, if it is evident that a state legislature intended to authorize cumulative punishments, a court's inquiry is at an end." *Johnson*, 467 U.S. at 499 n. 8, 104 S.Ct. 2536; *accord Hunter*, 459 U.S. at 368–69, 103 S.Ct. 673.

*Volpe*, 708 F.3d at 696-697.  "[W]hen assessing the intent of a state legislature, a federal court is bound by a state court's construction of that state's own statutes."  *Id*. (quoting *Banner v. Davis*, 886 F.2d 777, 780 (6th Cir. 1989)).  "Thus, for purposes of double jeopardy analysis, once a state court has determined that the state legislature intended cumulative punishments, a federal court must defer to that determination." *Id*. (citing *Banner*, 886 F.2d at 780).  In Ohio, to determine whether the legislature intended to authorize cumulative punishments, courts apply R. C. § 2941.25 (Ohio's multiple counts statute), not the *Blockburger* test.  *See Volpe*, 708 F.3d at 697; *see also Jackson v. Smith*, 745 F.3d 206, 212 (6th Cir. 2014) ("Ohio courts apply . . . [R.C. § 2941.25] not the *Blockburger* test, to ascertain the Ohio legislature's intent.") *cert denied*, 135 S.Ct. 118 (2014).

Here, the Ohio Court of Appeals analyzed Johnson's multiple-count conviction and sentence under R.C § 2941.25 and applied the standard enunciated by the Ohio Supreme Court in *State v. Johnson*, 942 N.E.2d 1061 (Ohio 2010)[7]:

---

[7]  On March 25, 2015, the Ohio Supreme Court revisited its holding in *Johnson* "with respect to when two or more offenses are allied offenses of similar import."  *State v. Ruff*, 34 N.E.3d 392, ¶ 1 (Ohio 2015). The *Ruff* court stated

{¶ 17} In the first assigned error, Johnson argues the trial court erred by imposing separate sentences for his convictions for aggravated robbery and attempted murder. Johnson contends these were allied offenses of similar import.

{¶ 18} Our review of an allied offenses question is de novo. *State v. Webb*, 8th Dist. Cuyahoga No. 98628, 2013–Ohio–699, ¶ 4, citing *State v. Williams*, 134 Ohio St.3d 482, 2012–Ohio–5699, 983 N.E.2d 1245, ¶ 28.

{¶ 19} R.C. 2941.25 is the codification of the judicial doctrine of merger and provides guidance as follows:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

R.C. 2941.25; *State v. Patterson*, 8th Dist. Cuyahoga No. 98127, 2012–Ohio–5511, ¶ 33.

{¶ 20} In *State v. Johnson*, 128 Ohio St.3d 153, 2010–Ohio–6314, 942 N.E.2d 1061, the Ohio Supreme Court established the proper analysis for determining whether offenses qualify as allied offenses subject to merger pursuant to R.C. 2941.25. In doing so, it expressly overruled *State v. Rance*, 85 Ohio St.3d 632, 1999–Ohio–291, 710 N.E.2d 699, and held that rather than compare the elements of the crimes in the abstract, courts must consider the conduct of the accused:

> In determining whether offenses are allied offenses of similar import under R.C. 2941.25(A), the question is whether it is possible to commit one offense and commit the other with the same conduct * * *. If the offenses correspond to such a degree that the conduct of the defendant constituting commission of one offense constitutes commission of the other, then the offenses are of similar import.

---

that "the circumstances of when offenses are of dissimilar import within the meaning of R.C. 2941.25(B) have been unclear." *Id*. The court proceeded to hold that "two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable." *Id*. at ¶ 26. Because *Ruff* was announced after Johnson's conviction became final, it is unlikely that *Ruff* would apply retroactively to Johnson's case. *See* State v. Kelly, 997 N.E.2d 215, 221 (Ohio App. Ct. Aug. 26, 2013) ("new judicial ruling may not be applied retroactively to a conviction that has become final"). Regardless, under the framework of either *Johnson* or *Ruff* the undersigned's recommendation with respect to Ground Four would remain the same, i.e., Johnson is unable to demonstrate that the trial court's failure to merge his aggravated robbery and attempted murder offenses prior to sentencing violated the Double Jeopardy Clause.

If the multiple offenses can be committed by the same conduct, then the court must determine whether the offenses were committed by the same conduct, i.e., "a single act, committed with a single state of mind."

If the answer to both questions is yes, then the offenses are allied offenses of similar import and will be merged.

Conversely, if the court determines that the commission of one offense will never result in the commission of the other, or if the offenses are committed separately, or if the defendant has separate animus for each offense, then, according to R.C. 2941.25(B), the offenses will not merge.

(Citations omitted.) *Id*. at ¶ 48–51, 710 N.E.2d 699; *State v. Burt*, 8th Dist. Cuyahoga No. 99097, 2013–Ohio–3525, ¶ 30.

{¶ 21} In the instant case, the aggravated robbery and the attempted murder were not committed with the same conduct or animus. The testimony at trial established that Johnson stuck a gun to the back of Keith's head and demanded the victim's money. Keith complied, Johnson took the money, and ordered him to run. At that juncture, the aggravated robbery was completed. Keith could have fled to safety and Johnson could have departed with his ill-gotten gains.

{¶ 22} However, when Keith started to flee as instructed, Johnson began shooting, hitting him in the leg. As Keith stumbled to the ground, Johnson approached and fired five more shots into Keith's stomach. At that juncture, a second offense with a separate animus was completed.

{¶ 23} Recently, we encountered a substantially similar fact pattern in *State v. Ranzy*, 8th Dist. Cuyahoga No. 97275, 2012–Ohio–2763. In *Ranzy*, defendants attempted to rob a victim at gun point. The victim attempted to flee, but was wrestled to the ground. The victim managed to extricate himself and began running in a zig zag fashion down the street. As the victim fled, defendant fired multiple gunshots, striking the victim in [the] shoulder.

{¶ 24} In *Ranzy*, addressing the same issue Johnson now raises, we specifically stated:

These offenses were not committed with the same conduct or animus. Once Randle opted to try to escape or flee from the robbery, the defendant and Vanderhorst decided to escalate the matter and try to kill him. True, defendant failed to successfully rob Randle, but that failed attempt does not create an allied offense situation where the offender can shoot at the victim attempting to murder him based on the logic that the robbery was "ongoing." This is not a case where the gun was fired accidentally; there were clear purposeful efforts to kill Randle by shooting him in the head and then proceeding to chase after him while still firing the weapon.

*Id*., citing *State v. Orr*, 8th Dist. Cuyahoga No. 96377, 2011–Ohio–6269, ¶ 38.

{¶ 25} Like *Ranzy*, the two convictions herein are not allied offenses of similar import. Consequently, the trial court did not err when it imposed separate sentences for the aggravated robbery and attempted murder convictions. Accordingly, we overrule the first assigned error.

\*        \*        \*

{¶ 36} After reviewing the sentencing transcript in its entirety, we conclude that the trial court fully engaged in the required analysis and fulfilled the statutory requirements of R.C. 2929.14(C)(4) to impose consecutive sentences. Accordingly, we overrule the second assigned error.

*Johnson*, 2014 WL585043, at \*3-6.

Johnson argues, "[L]ooking at the facts in this case makes it clear that the assailant's action of attempted murder during the robbery necessarily implicated the elements of aggravated robbery." Doc. 7, p. 8. He asserts that aggravated robbery requires the use or possession of a firearm or inflicting or attempting to inflict serious physical harm. *Id*. Accordingly, he contends that the injury to Keith occurred "as part and parcel of the aggravated robbery and was committed with the same animus" because shooting Keith "after the theft can be described as using a firearm while fleeing immediately after the [] theft offence under the definition of aggravated robbery." Doc. 7, p. 9.

The undersigned disagrees. As the Ohio Court of Appeals explained, the theft offense had been completed at the time Johnson shot Keith. Keith handed over his property at gunpoint and Johnson instructed Keith to run (completing the theft offense); Keith did began to run; Johnson shot him in the leg as he ran; Keith fell to the ground; Johnson thereafter approached Keith and shot him five times in the stomach. The Ohio Court of Appeals properly applied the correct state law to the facts of Johnson's case and reasonably determined that Johnson had a separate animus for attempted murder because shooting Keith five times in the stomach after Keith had fled and after the robbery was complete constituted a separate animus for attempted

murder.  The facts do not support that "the robbery was still occurring during the fleeing," as

Johnson contends.  Doc. 7, p. 11.

Ground Four fails on the merits.

### E.  A portion of Ground Five fails to state a claim and the remainder of Ground Five fails on the merits

In Ground Five, Johnson argues that he was denied a fair trial because of prosecutorial

misconduct and because the trial court failed to conduct a "proper" hearing to determine

potential juror bias.  Doc. 1, p. 4.

### 1.  Johnson fails to state a claim of prosecutorial misconduct

In his Petition, Johnson does not describe acts of prosecutorial misconduct.  Respondent

asserts that this claim fails to comport with Federal Civil Procedure Rule 8(a)(2) and should be

dismissed for failure to state a claim upon which relief can be granted.  Doc. 5, pp. 30-31.  In his

Traverse, Johnson does not address Respondent's argument and he does not discuss this claim.

Rule 2 of the Rules Governing Section 2254 provides, in relevant part,

(c) Form. The petition must:

(1) specify all the grounds for relief available to the petitioner;

(2) state the facts supporting each ground[.]

*Id*.  *See also Mayle v. Felix*, 545 U.S. 644, (2005) ("Rule 2 of the Rules Governing Habeas

Corpus Cases requires a more detailed statement" than the notice pleading requirements of Fed.

R. Civ. Pro. 8(a)); *Adams v. Armontrout*, 897 F.2d 332, 333 (8th Cir. 1990) ("We join the

numerous federal courts which have repeatedly expressed their unwillingness to sift through

voluminous documents filed by habeas corpus petitioners in order to divine the grounds or facts

which allegedly warrant relief."); *Mills v. Larose*, 2015 WL 687829, at *11 (N.D. Ohio Feb. 18,

19

2015) (federal habeas petition is subject to dismissal when it "fail[s] to provide factual context in support of legal conclusions[,]" citing *Smith v. Haskins*, 421 F.2d 1297, 1298 (6th Cir. 1970)).

Because this portion of Ground Five fails to provide factual context in support of its summary legal conclusion, *see id.*, it fails to comport with Rule 2(c) of the Rules Governing Section 2254 and should be dismissed.

### 2.  Johnson's claim of jury bias fails on the merits

In his Traverse, Johnson argues that the trial court "failed to conduct an appropriate hearing concerning juror bias as required by *Remmer v. United States*, 347 U.S. 227 (1954)."  He explains,

> On February 15, 2013, the jury returned a guilty verdict against petitioner. The next day, petitioner's grandmother, Ms. Cassandra Johnson, contacted the court to inform the judge that she recognized juror #12 as a woman she grew up with. Ms. Johnson then went to the home of the juror and [m]et with the woman. On February 27, 2013, defense counsel then filed a *Motion for a Remmer Hearing* to determine potential jury bias. On March 11, 2013, the court held a hearing but failed to subpoena juror #12, Elaine Davis. Ms. Johnson was called to the stand and testified that she visited the juror whom she said recognized her. What remained unclear from Ms. Johnson's testimony was the extent of Ms. Davis's recognition and at what point she had come to recognize her and whether that recognition had played a part in the verdict. Ms. Johnson stated that Ms. Davis told her "I should have been excused."

Doc. 7, p. 13 (citations to the record omitted).  Johnson asserts that the trial court's failure "to bring Ms. Davis to court where she could be properly questioned under oath regarding her potential bias against the petitioner" undermined his due process rights and deprived him of a fair trial.  *Id*.

In *Remmer v. United States*, 347 U.S. 227, 229 (1954), the Supreme Court stated, "In a criminal case, any private communication, contact, or tampering directly or indirectly, with a juror during a trial about the matter pending before the jury is … deemed presumptively prejudicial, if not made in pursuance of known rules of the court and the instructions and

directions of the court made during the trial, with full knowledge of the parties." "[D]ue process does not require a new trial every time a juror has been placed in a potentially compromising situation. Were that the rule, few trials would be constitutionally acceptable." *Smith v. Phillips,* *455 U.S. 209, 218 (1982)*.  Moreover, "an evidentiary hearing delving into allegations of juror misconduct is required only where 'extrinsic influence or relationships have tainted the deliberations.'" *Garcia v. Andrews,* 488 F.3d 370, 375 (6th Cir. 2007) (quoting *Tanner v. United States,* 483 U.S. 107, 120 (1987)).

The Ohio Court of Appeals considered this claim:

{¶ 67} In the sixth assigned error, Johnson argues the court erred by failing to conduct a hearing pursuant to *Remmer v. United States,* 347 U.S. 227, 74 S.Ct. 450, 98 L.Ed. 654 (1954), when his grandmother indicated, after the verdict was rendered, that she knew one of the jurors.

{¶ 68} About two weeks after the verdict, defense counsel filed a motion for a *Remmer* hearing to determine juror bias. On March 11, 2013, the trial court held a hearing on the matter and stated in pertinent part as follows:

> * * * I was going to sentence you, but I delayed the sentencing. This is after a trial, and I think February 15th of this year. I was going to sentence you, and I delayed sentencing because there was an issue with—well, I was concerned as to a juror issue. Mr. Dixon, after—and I should really be clear on the record what that juror issue was. Your grandmother went and saw Juror No. 12 on this case and said to her, Hey, we went to school together. And Juror No. 12 didn't remember, didn't know, and then apparently said, Yeah, we must have. And she notified the Court immediately after your grandmother went to her home. The juror called the Court, was upset by that kind of conduct. And then I had a sheriff's deputy and the prosecutor call and investigate what has occurred and what has happened and what was going on. Tr. 693–694.

{¶ 69} At the hearing, Johnson's grandmother testified that at some point during the trial she recognized Juror No. 12, but did not notify defense counsel or the [] trial court until after the verdict had been rendered. Johnson's grandmother specifically testified that it was after the verdict was rendered that she went to Juror No. 12's home to remind her that they had attended grade school together.

{¶ 70} In *Remmer,* the United States Supreme Court stated:

> In a criminal case, any private communication, contact, or tampering directly or indirectly, with a juror during a trial about the matter pending before the jury is,

for obvious reasons, deemed presumptively prejudicial, if not made in the pursuance of known rules of the court and the instructions and directions of the court made during the trial, with full knowledge of the parties. The presumption is not conclusive, but the burden rests heavily upon the Government to establish, after notice to and hearing of the defendant, that such contact with the juror was harmless to the defendant.

*Id*. at 229.

{¶ 71} Nonetheless,

due process does not require a new trial every time a juror has been placed in a potentially compromising situation. * * * Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen. Such determinations may properly be made at a hearing like that ordered in *Remmer* * * *.

*State v. Warmus*, 197 Ohio App.3d 383, 2011–Ohio–5827, 967 N.E.2d 1223 (8th Dist.), quoting *Smith v. Phillips*, 455 U.S. 209, 217, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982).

{¶ 72} Pivotally, the contact with the juror occurred after the verdict had been rendered. There was no allegation that any private communication occurred with Johnson's grandmother and Juror No. 12 during the trial. In addition, as pointed out by the trial court, Juror No. 12 indicated that she did not immediately remember having gone to school with Johnson's grandmother.

{¶ 73} Under the circumstances of the instant case, the need for a *Remmer* hearing was not warranted. As such, the trial court did not err when it denied the motion for a *Remmer* hearing. Accordingly, we overrule the sixth assigned error.

*Johnson*, 2014 WL 585043, at *11-12.

Johnson asserts, "[it] remained unclear from Ms. Johnson's testimony [] the extent of Ms. Davis's recognition and at what point she had come to recognize her and whether that recognition had played a part in the verdict." Doc. 7, p. 13.  Thus, Johnson challenges the state court's decision as unreasonably applying the correct legal principle to the facts of his case.  *See* 28 U.S.C.A 2254(d)(2).

Johnson's challenge lacks merit.  The record can fairly be read to support the Ohio Court of Appeals' factual determination that Juror No. 12 did not recognize Ms. Johnson as a former

classmate during trial—testimony from Ms. Johnson indicating that Juror No. 12 did not recognize her immediately and communications from Juror No. 12 to the trial court's bailiff that Juror No. 12 stated that she did not initially recognize Ms. Johnson. *See* Doc. 6-4, pp. 122-136 (hearing transcript). *See Wood v. Allen*, 558 U.S. 290, 301-302 (2010) (evidence presented in the state court record "can fairly be read to support the [] court's factual determination" and the finding was not, therefore, unreasonable); 28 U.S.C. 2254(d)(2). Moreover, it is undisputed that Ms. Johnson did not visit Juror No. 12 until after the verdict was rendered, not during trial. Accordingly, the Ohio Court of Appeals determination that a *Remmer* hearing was not warranted was not unreasonable. *See* 28 U.S.C. 2254(d)(2).

### F. Ground Six fails on the merits

In Ground Six, Johnson argues that he was denied an evidentiary hearing by the trial court on his post-conviction petition despite "uncontroverted evidence" of actual innocence. Doc. 1, p. 4. He also asserts that his post-conviction counsel was ineffective for failing to timely file his post-conviction petition. *Id*. To recap: Johnson filed an untimely post-conviction petition, which the trial court denied as untimely and, alternatively, on the merits. On appeal to the Ohio Court of Appeals, Johnson asserted that his post-conviction counsel was ineffective for filing his petition late. The Ohio Court of Appeals affirmed the trial court's finding that the petition was untimely filed and on the merits.

Respondent argues that Johnson's claim that he was denied an evidentiary hearing is not cognizable and that his ineffective assistance of counsel claim is meritless because a petitioner has no right to counsel in collateral proceedings. Doc. 5, pp. 9-10.

### 1. Johnson's evidentiary hearing claim is not cognizable

In his Traverse, Johnson does not respond to Respondent's contention that his claim that he was improperly denied an evidentiary hearing is not cognizable on federal habeas review. It

is settled law in the Sixth Circuit that alleged errors in post-conviction proceedings, such as the failure to grant evidentiary hearings, are outside the scope of federal habeas review.  *Cornwell v. Bradshaw*, 559 F.3d 398, 411 (6th Cir. 2009) (petitioner's claim that the state court improperly denied him an evidentiary hearing not cognizable in habeas corpus proceedings); *Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir. 2007); *Kirby v. Dutton*, 794 F.2d 245, 247 (6th Cir. 1986) ("We decline to allow the scope of the writ to reach this second tier of complaints about deficiencies in state post-conviction proceedings.").  Accordingly, Johnson's claim that the state court erred when it denied his petition for post-conviction relief without a hearing is not cognizable.

### 2.  Johnson's claim of ineffective assistance of post-conviction counsel is without merit

In Ground Six, after setting forth his claim that the trial court improperly denied him an evidentiary hearing, Johnson states, "Petitioner['s] post-conviction counsel was also ineffective for failure to timely [file] a petition for post-conviction relief even though counsel had the necessary information to file within the time restrictions of Ohio law."  Doc. 1, p. 4.  It is not clear whether Johnson is asserting ineffective assistance of post-conviction counsel as cause to excuse his untimely filing in the state court or as a stand-alone claim.  Either way, Johnson's claim fails.

Johnson appears to be asserting ineffective assistance of post-conviction counsel as cause to excuse his untimely filing of his post-conviction petition.  He refers to ineffective assistance of post-conviction counsel in the section of his Traverse subtitled "Procedural Default" and states, "ineffective assistance of counsel in post-conviction proceedings is a viable claim which can excuse any procedural default."  Doc. 7, p. 2.  However, the only ground Johnson alleges in his federal habeas petition that he also brought in his post-conviction petition is that the trial court

denied him an evidentiary hearing, which, as described above, is not cognizable. Thus, even if ineffective assistance of post-conviction counsel could excuse his untimely filing, his underlying claim is not cognizable.[8]

To the extent that Johnson is asserting ineffective assistance of post-conviction counsel as a stand-alone claim, he provides no argument explaining how counsel was ineffective and how he was prejudiced as a result. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984) (to establish ineffective assistance of counsel, a defendant must show that counsel's performance was deficient and that he was prejudiced as a result). Thus, this argument has been waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." (internal citations omitted)); *Meridia Prods. Liab. Litig. v. Abbott Labs.*, 447 F.3d 861, 868 (6th Cir. 2006).

Ground Six is not cognizable and without merit.

---

[8]  Johnson cites *Martinez v. Ryan*, 132 S.Ct. 1309 (2012) and *Trevino v. Thaler*, 133 S.Ct. 1911 (2013) in support of his position. These cases allow federal habeas courts to consider ineffective assistance of state post-conviction counsel to serve as cause to excuse a procedurally defaulted ineffective assistance of trial counsel claim. *Id.* at 1914-1915. Johnson does not allege an ineffective assistance of trial counsel claim that he raised in his post-conviction petition.

## IV. Conclusion and Recommendation

For the reasons stated above, the undersigned recommends that Petitioner's habeas Petition be **DISMISSED** in part and **DENIED** in part because Grounds One and Three are procedurally defaulted, Ground Two is not cognizable, Ground Four fails on the merits; a portion of Ground Five fails to state a claim and the remainder fails on the merits; and a portion of Ground Six is not cognizable and fails on the merits.


Dated: January 6, 2016

Kathleen B. Burke
United States Magistrate Judge


## **OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); s*ee also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).